Irving Cantor and Irving Cantor, Transferee [1] v. Commissioner. Cantor v. Commissioner
Docket No. 37832.
United States Tax Court
T.C. Memo 1957-173; 1957 Tax Ct. Memo LEXIS 77; 16 T.C.M. (CCH) 777; T.C.M. (RIA) 57173; September 13, 1957
Irving Cantor, Hotel Marcey, W. End Avenue at 95th. Street, New York, N. Y., pro se. John J. Madden, Esq., and William F. Chapman, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The respondent has determined deficiencies in income tax and additions thereto as follows: Additions to tax under
Year
Deficiency
Sec. 293(b)
Sec. 294(d)(2)
Sec. 294(d)(1)(A)
1944
$434,761.33
$217,380.67
$ 924.04
1945
798,901.54
399,450.77
$47,993.59
79,989.32
1946
554,820.55
277,410.28
33,424.33
55,707.20
1947
3,089.60
1,544.80
185.38
308.96
The questions for decision are: (1) Whether petitioner understated his income for the years 1944 through 1947; (2) whether part of each *78 deficiency was due to fraud with intent to evade tax; (3) whether petitioner is liable for additions to tax under section 294(d)(2) of the Internal Revenue Code of 1939; and (4) whether petitioner is liable for additions to tax under section 294(d)(1)(A) of the 1939 Code. Findings of Fact Some of the facts have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by this reference. Petitioner, Irving Cantor, hereinafter referred to as Cantor, filed timely income tax returns for the years in question with the collector of internal revenue for the fourteenth district of New York. During the years 1944 to 1947, inclusive, Cantor conducted business under the name of Criterion Lamp & Shade Co., hereinafter referred to as Criterion, a sole proprietorship. Criterion was in the business of manufacturing lamps and selling them to retailers. Cantor had been engaged in such business prior to 1944. During a part of the taxable years he also carried on such business in the name of Twilite Lamp Mfg. Corp., hereinafter referred to in more detail. Criterion's books were kept on an accrual basis and Cantor's tax returns, which were prepared from such books, *79 were prepared on the same basis. Leon Rosen, a public accountant, set up the books and records used by Criterion. The books were kept by a bookkeeper according to Rosen's system and under his supervision. Cantor was familiar with the bookkeeping system set up by Rosen. Respondent's agents made requests to both Cantor and Rosen to see Criterion's books for the years 1944 through 1947. Either Cantor or Rosen reported that the books for 1944 and 1945 had been destroyed. Rosen furnished respondent's agents with a copy of his work papers for the year 1945, which contained a trial balance purportedly taken from the books and records. The work sheet contained an item for cash listed as "Cash on Deposit: National Bronx Bank" with a balance of $1,768.03. Respondent's agents were shown, piecemeal, some books for the years 1946 and 1947. They were never shown the accounts receivable ledger for either year. At a later time when these books were again requested they were not forthcoming. Because of the failure of petitioner to supply a reasonably complete set of books and records to respondent's agents and the inaccuracy of those available to them, they resorted to the unexplained bank-account *80 method of determining his income. At various times during the years in question petitioner had bank accounts in Criterion's name in the Manufacturers Trust Company, The Public National Bank and Trust Company, the Corn Exchange Bank Trust Co., the Trade Bank and Trust Company, and The National Bronx Bank, all located in New York City. Petitioner made the following deposits in these accounts: Bank
1944
1945
1946
1947
Manufacturers Trust Co.
$ 60,356.55
Public National Bank & Trust Co.
553,079.12
$ 566,353.03
$ 669,286.69
$ 16,607.22
Trade Bank & Trust Co.
195,982.27
Corn Exchange Bank Trust Co.
218,858.18
51,137.00
396,867.37
National Bronx Bank
282,603.64
749,069.38
12,514.17
$809,417.94
$1,067,814.85
$1,469,493.07
$425,988.76
The balances in these accounts as of the end of each year in question were as follows: 12-31-44
12-31-45
12-31-46
12-31-47
Public National Bank & Trust Co.
$39,355.49
$36,972.01
$ 1,917.61
National Bronx Bank
5,518.21
14,874.26
Corn Exchange Bank Trust Co.
57,490.62
$2,121.85
$39,355.49
$99,980.84
$16,791.87
$2,121.85
On his income tax returns, Cantor *81 reported net sales and net income of Criterion as follows: Net Income
Year
Net Sales
or Loss
1944
$287,338.19
$30,240.95
1945
243,985.20
28,210.70
1946
611,130.66
34,315.42
1947
315,234.67
(22,734.32)
Respondent's agents determined that Criterion's books and records for 1944 reflected only the accounts in the Trade Bank and Trust Company and the Manufacturers Trust Company; in 1945 and 1946 only the account in the National Bronx Bank; and in 1947 only the accounts in the National Bronx Bank and the Corn Exchange Bank Trust Co. They further determined that the bank deposits represented sales of Criterion, the bulk of which was not recorded on Criterion's books nor reported on Cantor's tax returns. In computing unreported income for the year 1944, respondent's agents eliminated from the accounts in the Trade Bank and Trust Company, Manufacturers Trust Company, and the Public National Bank and Trust Company the sums of $12,322.93, $20,000, and $15,000, respectively, as returned or redeposited items, that is, amounts which had been withdrawn for a specific purpose and were redeposited soon afterwards without being used for any purpose. We find *82 that there were similar redeposited items in petitioner's bank accounts (considered as a whole) for the years 1945 and 1946 in the respective amounts of $51,000 and $73,000. Cantor maintained a personal account at the Public National Bank and Trust Company. In 1945, 26 checks, totaling $7,122.71 and representing sales made by Criterion, were deposited in this account. Cantor was the sole owner of Twilite Lamp Mfg. Corp. Although sales of lamps were made by Cantor on Twilite's invoices, Twilite did not function as an active corporation. It did not maintain a factory, an office, a labor staff, or a selling organization. It had no accounting books or records and reported no income for the years involved. Sales of $82,454.50 were made in Twilite's name during 1945. These sales were not recorded on either Cantor's or Criterion's books and records and are to be included as sales in computing Cantor's income for 1945. During the years in question, raw materials used in the manufacture of lamps were in scarce supply. In order to meet the demand for its product, Criterion purchased materials at prices in excess of the O.P.A. ceiling prices. The ceiling price for electric sockets used *83 by Criterion was 15 cents each. Criterion paid as much as 50 cents each for sockets in 1945, and as much as 60 cents in 1946. The scarcity of raw materials ended sometime in 1947. In 1946 Criterion contracted with a Mexican socket manufacturer to meet its need for sockets. Criterion paid at least $50,000 plus import duties for the Mexican goods. These proved unsatisfactory and Criterion had to recall its lamps and replace the faulty sockets. On his income tax returns, Cantor reported the following costs of raw materials purchased by Criterion: 1944
$213,146.53
1945
178,132.87
1946
532,719.88
1947
112,737.26
In computing unreported income for the year 1946, respondent allowed additional purchases of $67,331.09. In 1946 Rosen, on behalf of Cantor, submitted a profit-and-loss statement of Criterion's operations for the period beginning April 9, 1945, and ending December 31, 1945, to the National Bronx Bank. This statement showed net sales for the above period of $243,985.20, the same figure reported as sales for the year 1945 on Cantor's tax return. Criterion had unreported sales during the taxable years in the following amounts: 1944
$474,756.82
1945
862,406.86
1946
580,092.60
1947
16,607.22
*84 Criterion had raw materials costs, in addition to raw materials costs taken on its return and the additional cost allowed by respondent for the year 1946, as follows: 1944
$356,067.62
1945
646,805.15
1946
435,069.45
1947
12,455.42
Cantor was indicted and convicted for violation of section 145(b), 1939 Code, for the calendar year 1945. Cantor filed false and fraudulent returns with intent to evade tax for each of the years here at issue. Part of the deficiency in each year was due to fraud with intent to evade tax. Cantor failed to file a declaration of estimated income tax for each of the years here at issue. Opinion KERN, Judge: During the taxable years 1944 to 1947, inclusive, the petitioner was engaged in the business of manufacturing and selling lamps. The business had been started by him several years prior to 1944. Some sales were made in the name of Twilite Lamp Mfg. Corp., a corporation of which he was the sole owner and which carried on no corporate business of its own. No records were made of these sales. The great bulk of the business was carried on by petitioner under the name of Criterion Lamp & Shade Co., and, for this business, books *85 of account were maintained. During the taxable years these books were kept with the knowledge and consent of petitioner and his accountant in a manner which falsely recorded petitioner's business transactions. Petitioner concedes that sales were grossly understated and it appears that the books ignored several of the bank accounts maintained by petitioner. The primary purpose motivating petitioner to maintain these admittedly false books was to hide his black market operations. However, when his Federal income tax returns were filed for the taxable years, petitioner used in their preparation the figures appearing on these books although he knew that they were false and admittedly knew that they understated his gross income. When, under these circumstances, the respondent was faced with the problem of determining petitioner's correct taxable income for the years here in question, he would have been justified in disregarding petitioner's books even if they had been available. However, for 2 of the taxable years they were not available, while for 2 others, one of petitioner's books (the accounts receivable ledger) was never available, and the others were made available only in an unsatisfactory *86 piecemeal manner. Therefore, respondent was justified in resorting to an examination of petitioner's bank accounts in an attempt to reconstruct petitioner's income, which was not correctly reflected by his books and records. We understand from the record that respondent's general method in such a reconstruction was to treat the excess of all petitioner's bank deposits over his reported sales as unreported sales and, to this extent, increase petitioner's taxable income. However, in 1 of the 4 taxable years respondent determined that approximately 5 per cent of the deposits was redeposited by petitioner and, to this extent, was not the proceeds of and did not represent petitioner's sales. In another of these years respondent gave petitioner credit for additional purchases. Petitioner filed herein a document entitled "Brief for Petitioner," consisting of 462 typewritten pages. However, his position is more succinctly stated in his opening statement as follows: "(a) That he [the petitioner] made the correct amount of income taxes due to the Government each year based on his correct earnings. "(b) That therefore, there is no deficiency due the Government. "(c) That the monies *87 received from the unreported sales were offset by unreported purchases. "(d) That the monies received from the unreported sales were kept and used in the business and were not fraudulently taken for his personal gain. "(e) That the Government has no prima facie case." From what we have already said in this opinion, it is evident that the validity of petitioner's arguments (a) and (b) depends upon the validity of his argument (c). We will consider his position stated as (d) above when we later consider the additions to tax determined by respondent on account of alleged fraud. With regard to petitioner's position stated as (e) above, it is obvious that, with regard to the amount of deficiencies in tax determined by respondent, the burden of proving error on the part of respondent is on the petitioner. Doll v. Glenn, 231 Fed. (2d) 186; Hoefle v. Commissioner, 114 Fed. (2d) 713. Petitioner chose not to testify on his own behalf and refused to testify when called as a witness by the respondent. Therefore, we do not have the benefit of his testimony with regard to the specific sources of the various deposits in his several bank accounts. By reason of his *88 questions addressed to other witnesses, we gather the impression that he would concede that those deposits which do not represent redeposited items or loans or capital contributions must represent the proceeds of sales. However, the petitioner who might have given helpful testimony as to the amounts of such redeposited items, loans, or capital contributions failed and refused to do so. Although we have concluded that respondent's general method of reconstructing petitioner's income which led to his determinations here in issue was justified and was not arbitrary, and in spite of petitioner's failure and refusal to testify, we are persuaded by other testimony in the record that the amounts of petitioner's unreported income for the taxable years were not as large as those determined by respondent. We are convinced that there were redeposited items and/or loans in petitioner's bank accounts for each of the taxable years and also that there were unreported purchases in considerable amounts. Accordingly, as indicated in our findings of fact, we have adjusted downward the unreported income of petitioner for each of the taxable years from those amounts determined by the respondent. This *89 we have done, pursuant to Cohan v. Commissioner, 39 Fed. (2d) 540, by concluding that the percentage of redeposited items to total bank deposits in 1945 and 1946 was approximately equal to that determined by respondent in 1944, and that the percentage of cost of goods sold to proceeds of sales was approximately the same as that shown on petitioner's returns which averaged approximately 75 per cent. Even though we have made these adjustments (and we point out that they are rather generous, so far as the taxpayer is concerned, in view of the record herein), the amount of petitioner's unreported income in each of the taxable years is considerable. His failure to return substantial amounts of income over a period of 4 years was due to petitioner's deliberate action in returning as gross income only the sales reflected in his books of account, which in this respect were false and were known by petitioner to be false. We recognize that the burden of proof on the fraud issue is on respondent, and that the presumption of the correctness of his determination with regard to the deficiencies is not available in a consideration of fraud. Therefore, we have not assumed, in our *90 consideration of this issue, that the unreported sales and unreported gross income of petitioner were in the exact amounts found by us, in which findings the presumption of correctness attaching to respondent's determination may have played a part. Aside from any such presumption, the record affirmatively shows or petitioner concedes the deliberate omission from petitioner's income tax returns of considerable amounts representing proceeds of sales and therefore gross income during all of the 4 taxable years. We cannot assume and petitioner has failed to even attempt to prove that the cost of goods sold equaled or exceeded the proceeds of such sales. Only a generous application of the rule in the Cohan case would permit a conclusion from the record herein that the cost of goods sold amounts to 75 per cent of the proceeds of sales as affirmatively proved or conceded by petitioner. Therefore, in considering the fraud issue, we conclude that the respondent has proved unreported income of petitioner in large amounts for each of the taxable years, which income was not reflected in petitioner's books. Petitioner concedes that these books were false. His income tax returns were made in conformity *91 with these books and were therefore false. Petitioner knew and must have intended that the respondent would act in reliance on these false returns. Therefore, they were both false and fraudulent. Petitioner's argument on the fraud issue appears to be (1) that there were no deficiencies in tax since "the monies received from the unreported sales were offset by unreported purchases" and therefore there could be no fraudulent failure to report income, and (2) "that the monies received from the unreported sales were kept and used in the business and were not fraudulently taken for his personal gain." As we have already indicated, the first argument is rejected as contrary to the evidence herein. The second argument is specious on its face. It assumes that the business income of a sole proprietorship is properly taxable to the owner only if it is withdrawn from the use of its business and is finally devoted to the personal (as distinguished from the business) uses of the owner. Obviously, this argument is without merit. On the entire record we conclude that parts of the deficiencies here involved were due to fraud with intent to evade tax. The petitioner has neglected to offer any *92 proof to establish error in the respondent's determination of additions to tax under sections 294(d)(1)(A) and (d) (2). Such determinations, where applicable upon the deficiencies determined herein, are approved. Decision will be entered under Rule 50. Footnotes
1. The parties have stipulated that there is no liability due from Irving Cantor as transferee of the Twilite Lamp Mfg. Corp.↩